UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL BROWN; and VINCENT ROGOWSKI,

                Plaintiffs,

v.

                5:09-CV-0125
                (GTS/DEP)

COUNTY OF MADISON,

                Defendant.
_____

APPEARANCES:                          OF COUNSEL:

OFFICE OF JOHN R. VONINSKI          JOHN R. VONINSKI, ESQ.
  Counsel for Plaintiffs                   ROGER B. WILLIAMS, ESQ.
P.O. Box 611
Manlius, NY 13104

HISCOCK & BARCLAY LLP              CHRISTOPHER J. HARRIGAN, ESQ.
  Counsel for Defendant                 ANNE B. DOTZLER, ESQ.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently pending before the Court, in this civil rights action filed by Paul Brown and Vincent Rogowski ("Plaintiffs") against the County of Madison ("Defendant"), is Plaintiffs' motion to enforce the parties' settlement agreement pursuant to Fed. R. Civ. P. 60(b). (Dkt. No. 61.) For the reasons set forth below, Plaintiffs' motion is denied.

I.     RELEVANT BACKGROUND

   A.     **Plaintiffs' Claims**

Generally, liberally construed, Plaintiffs' Amended Complaint alleges that, on October 9, 2007, in Wampsville, New York, Defendant wrongfully denied them entry to the Madison County Courthouse by failing to make the building accessible to disabled persons of limited mobility (such as Plaintiffs), thus violating their following rights: (1) their right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1983; (2) their right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983; (3) their right to access the courts under the First Amendment and 42 U.S.C. § 1983; (4) their right to a public trial under the Sixth Amendment and 42 U.S.C. § 1983; and (5) their right to public accommodations under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"). (*See generally* Dkt. No. 26 [Plfs.' Am. Compl.].) As relief for these violations, the Amended Complaint seeks declaratory relief, injunctive relief, compensatory damages, and attorney's fees. (*Id*.) Familiarity with the factual allegations supporting these claims and forms of requested relief is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id*.)

   B.     **Relevant Procedural History**

On September 7, 2011, the parties reached a "tentative settlement" of the issues pending in this litigation, the "material terms" of which they placed on the record in open court. (Dkt. No. 61, Attach. 3, at 2-3 [Transcript of Settlement Proceeding].) Pursuant to those terms, the parties agreed that, *inter alia*, (1) Defendant will undertake the ground-level renovations of the Madison County courthouse as proposed in the February 2011 architectural design drawings

(attached as Exhibit A to the transcript), (2) after that approval is obtained, Defendant will retain an architect to amplify the drawings and then will submit those amplified drawings to Plaintiffs for approval, (3) after Plaintiffs have approved the amplified drawings, Defendant will submit the drawings to the New York State Office of Court Administration ("OCA") for approval, (4) after the OCA has approved the amplified drawings, Defendant will enter into the bid process, (5) following the proceeding of September 7, 2011, Defendant will "negotiate a comprehensive settlement agreement and release that will include the terms that we've talked about here today as well as other terms relating to the release of this claim and the continuing jurisdiction of the Court, among other things," and (6) Defendant will seek, and recommend, the approval of the terms by the Madison County Board of Supervisors. (*Id*. at 3-6.)

On February 14, 2012, the parties negotiated and entered into a written Settlement Agreement. (Dkt. No. 61, Attach. 5.) In pertinent part, that written Settlement Agreement provided as follows:

> (a) <u>Renovations</u>. Defendant shall make certain renovations to the Madison County Courthouse as reflected in the detailed architectural plans and drawings agreed upon by the Parties, and approved by the Madison County Board of Supervisors as well as the New York State Office of Court Administration. ***Defendant shall provide Plaintiffs' attorneys with its architect's amplified plans and drawings of the renovations for review and approval prior to submitting same for approval to the Office of Court Administration, its Chief Architect, and its Statewide ADA Coordinator. Plaintiffs may object to the amplified drawings only if the proposed renovations are not in compliance with the Americans with Disabilities Act of 1990, as amended, or the New York State Building Code.*** Upon review and approval of the proposed renovations by Plaintiffs, Defendant shall submit the proposed renovations to the Office of Court Administration for approval.

(*Id*. at 2 [emphasis added].) On March 6, 2012, the Court issued an Order dismissing the case without prejudice to the right of the parties to secure reinstatement of the case within one

3

hundred and eighty (180) days after the date of this judgment by making a showing that the settlement was not, in fact, consummated. (Dkt. No. 42.) Subsequently, that deadline was extended and then eventually stayed.[1]

On June 18, 2012, Defendant provided 16 pages of plans and drawings to Plaintiffs for their review and approval. (Dkt. No. 63, Attach. 1; *see also* Dkt. No. 43 [admitting receipt].) However, at some point between June 18, 2012, and August 10, 2012, Plaintiffs objected to those plans and drawings, and requested detailed "bid drawings." (Dkt. No. 63, at ¶ 7; Dkt. No. 66, Attach. 1 [attaching email message dated Aug. 10, 2012]; *cf.* Dkt. No. 43 [stating that "there have been multiple clarifications requested by the Plaintiffs"]; Dkt. No. 66, at ¶¶ 7-8 [Voninski Affirm., arguing that what was "promised" and "contemplated" in the Settlement Agreement were "bid drawings"].) On August 10, 2012, Defendant sent Plaintiffs an email message advising them that, "per your request, the County has directed its architect to submit more detailed drawings for the Courthouse renovation project . . . ." (Dkt. No. 66, Attach. 1.)

Between August 10, 2012, and March 1, 2013, the following occurred: (1) Defendant's expert architect and engineer (i) met with the County representatives and judges to discuss details of the project, (ii) conducted a comprehensive inspection of the space being renovated, and (iii) prepared the comprehensive and detailed bid drawings; and (2) individuals' schedules were coordinated so that the OCA, as it demanded, could be included in any meetings between

---

[1] More specifically, on August 29, 2012, Plaintiffs requested a 60-day extension of the 180-day deadline set forth in the Court's Order of March 6, 2012. (Dkt. No. 43.) That same day, the Court issued a Text Order granting Plaintiffs' request. (Text Order filed Aug. 29, 2012.) Over the next eight months, Plaintiffs requested, and was granted, two more deadline extensions. (Dkt. No. 44; Text Order filed Nov. 5, 2012; Dkt. No. 45; Text Order filed May 1, 2013.) On May 6, 2013, the deadline for finalizing settlement was stayed. (Text Minute Entry dated May 6, 2013.)

Defendant's experts, Defendant, and the County's judges regarding the plan. (Dkt. No. 63, at ¶ 8.)

On March 1, 2013, Defendant provided 33 pages of more-detailed plans and drawings to Plaintiffs for their review and approval. (Dkt. No. 63, Attach. 2.) However, on March 12, 2013, Plaintiffs objected to the more-detailed plans and drawings on the ground that they were not in compliance with the ADA and New York State Building Code (e.g., due to purported issues regarding the inclusion of a power door, changes to the "area of refuge" adjacent to the elevator, and modifications to the judge's bench). (Dkt. No. 63, at ¶ 11; Dkt. No. 63, Attach. 3, at 2.) On April 10, 2013, Defendant sent Plaintiffs a letter (1) forwarding its architect's response to the objections (which asserted that changes would be made to comply with some of the objections, but that the other objections were invalid and not required under the ADA or the New York State Building Code due to, *inter alia*, "technical[] infeasib[ilty]," unreasonableness and/or exemptions), and (2) stating that the Statewide ADA Coordinator has advised that she will not approve the Courthouse renovation plans and drawings (because such authority lies solely and exclusively with the OCA's Chief Architect). (Dkt. No. 63, at ¶ 12; Dkt. No. 63, Attach. 4.) On April 12, 2013, Plaintiffs' architect replied to the response (expressing his disagreement with the opinions of Defendant's architect). (Dkt. No. 63, at ¶ 13; Dkt. No. 63, Attach. 5.)

Between April of 2013 and June of 2013, Defendant communicated with its experts and the OCA regarding the proposed Courthouse renovation plans, had discussions with Plaintiffs' attorneys regarding their objections to the most-recent drawings of Defendant's architect, and participated in status conferences with the Court. (Dkt. No. 63, at ¶ 14.)

On July 17, 2013, Defendant sent Plaintiffs a letter forwarding the comments of, *inter alia*, the OCA's Chief Architect, and expressing its "hop[e] to schedule a time to meet with you to discuss these comments and all remaining open issues in this case." (Dkt. No. 63, at ¶ 16; Dkt. No. 63, Attach. 7, at 2.) On July 23, 2013, Plaintiffs sent Defendant a letter stating, *inter alia*, that there was "no basis for us to get together," until Defendant provides "revisions [to the plans] based upon . . . Plaintiffs' architect's review and comments regarding ADA compliance." (Dkt. No. 63, at ¶ 17; Dkt. No. 63, Attach. 8, at 2.) On July 26, 2013, Defendant sent Plaintiffs a letter (1) stating that, while the OCA's Chief Architect is willing to confirm that the renovation plans are "suitable and sufficient" for courthouse operations, he is unwilling to confirm that the proposed renovations are ADA-compliant, and (2) repeating that it was "hoping to sit down and discuss with you a resolution of the parties' differing views regarding your architect's comments to the County's drawings." (Dkt. No. 63, at ¶ 18; Dkt. No. 63, Attach. 9, at 2.) On August 13, 2013, Defendant sent Plaintiffs a letter advising them of its availability for a meeting between the parties and their experts. (Dkt. No. 63, at ¶ 19; Dkt. No. 63, Attach. 10.) On August 16, 2013, Plaintiffs sent Defendant a letter (1) rejecting Defendant's invitation to meet until it provided a proposed "detailed agenda of the issues to be discussed," and (2) asking if Defendant would reimburse Plaintiffs for their expert's attendance at the meeting. (Dkt. No. 63, at ¶ 20; Dkt. No. 63, Attach. 11.) On August 20, 2013, Defendant sent Plaintiffs a letter (1) setting forth the specific issues that it had been hoping to discuss with Plaintiffs, and (2) stating that it will not pay for their architect to participate in the meeting. (Dkt. No. 63, at ¶ 21; Dkt. No. 63, Attach. 12, at 2-3.)

On October 16, 2013, the parties met and discussed an alternative renovation plan proposed by a new architect retained by Defendant. (Dkt. No. 63, at ¶¶ 25-26; Dkt. No. 63, Attach. 13, at 2-3.) At some point before November 15, 2013, subject to the approval by the Madison County Board of Supervisors, Plaintiffs agreed to an alternative courtroom renovation plan for the Madison County Veterans' Building, which would have required a revision to the Settlement Agreement. (Dkt. No. 63, at ¶ 27; Dkt. No. 63, Attach. 14, at 2; Dkt. No. 66, at ¶ 6.) However, at some point before December 16, 2013, Defendant abandoned that plan (due to its inability to pay the plan's estimated cost of $3.9 million), and proposed a second alternative plan, which Plaintiffs rejected. (Dkt. No. 63, at ¶ 28; Dkt. No. 63, Attach. 15, at 2; Dkt. No. 66, at ¶ 6.)

On December 24, 2013, the Court reopened the case and set discovery and motion-filing deadlines based on the parties' failure to settle the case. (Text Order filed Dec. 24, 2013.)

On February 27, 2014, Plaintiffs filed the current motion. (Dkt. No. 61.)

### C. Parties' Briefing on Plaintiffs' Motion

Generally, in support of their motion, Plaintiffs argue that, since the time the parties executed a written Settlement Agreement in February of 2012, Defendant has "failed to produce the detailed Plans and Specifications to construct the handicapped-accessible courtroom which the settlement requires as the next . . . step." (*See generally* Dkt. No. 61, Attach. 6, at 9 [attaching page "4" of Plfs.' Memo. of Law].) As relief, Plaintiffs request the following: (1) that the Court to reduce the Settlement Agreement to an Order and Judgment, and to enforce that Settlement Agreement; (2) that the Court establish a schedule for the implementation of the terms of the Settlement Agreement; (3) that the Court retain jurisdiction of this matter to monitor

and supervise the progress for the compliance of the Settlement Agreement; (4) that the Court appoint a Court Monitor, Special Master or Agent to supervise the completion of the work needed to effectuate this settlement between the parties, at the expense of Defendant; and (5) that the Court award to Plaintiffs reasonable attorney fees and costs upon the completion of the work promised to be undertaken in the Settlement Agreement. (*Id*. at 15 [attaching page "10" of Plfs.' Memo. of Law].)

Generally, in its response to Plaintiffs' motion, Defendant asserts two arguments: (1) on June 18, 2012, Defendant provided Plaintiffs with the amplified plans and drawings required by the written Settlement Agreement, but Plaintiffs wrongfully rejected those plans and drawings (i.e., not on the ground that the plans and drawings did not comply with the ADA or the New York State Building Code but on the ground that they purportedly were not sufficiently detailed), thus not fulfilling a condition precedent to performance of the Settlement Agreement; and (2) in any event, after Defendant provided more-detailed amplified plans and drawings (even though they disagreed with Plaintiffs' rejection of the original amplified plans), the OCA advised that it will not approved the amplified plans and drawings, thus (a) not fulfilling a condition precedent to performance of the Settlement Agreement, (b) rendering performance under the Settlement Agreement legally impossible, and/or (c) frustrating the purpose of the Settlement Agreement. (*See generally* Dkt. No. 64, at 7-14 [attaching pages "4" through "11" of Def.'s Opp'n Memo. of Law].) As relief for having to defend against Plaintiffs' frivolous motion, Defendant requests reasonable attorney fees and costs. (*Id*. at 14-15 [attaching pages "11" and "12" of Def.'s Opp'n Memo. of Law].)

Generally in their reply to Defendant's response, Plaintiffs assert six arguments: (1) defense counsel is neither an architect nor a civil engineer and thus his affidavit constitutes unsupported hearsay having no probative value; (2) as set forth in the affidavit of Architect Paul Huysman, the 16 pages of plans and drawings submitted by Defendant to Plaintiffs on June 18, 2012, cannot be considered "amplified plans"; (3) all that needs be done at this point is for Defendant "to promptly present a final design for the reconstruction of a small portion of its Courthouse for an accessible courtroom with sufficient detail which can be reviewed for compliance to the NYS Building Code . . . and the [ADA], together with appropriating the necessary county funding to timely construct the project"; (4) Defendant's argument that the OCA's Chief Architect is unwilling to confirm that the proposed renovations are ADA-compliant is immaterial under the Settlement Agreement because, by confirming that the renovation plans are "suitable and sufficient" for courthouse operations, the OCA's Chief Architect would inferentially be stating that they complied with New York State Public Building Law § 51 (which requires all construction in public buildings to provide for accessibility); and (5) because there is no "upset clause," Defendant cannot use excessive cost as a reason to abandon a proposed plan; and (6) defense counsel lacks authority to request relief other than settlement. (*See generally* Dkt. No. 66 [Plfs.' Counsel's Reply Affirm.].)

## II. GOVERNING LEGAL STANDARD

Because the parties have (in their memoranda of law) demonstrated an accurate understanding of the legal standard governing Plaintiffs' motion, the Court will not repeat that legal standard in this Decision and Order, which (again) is intended primarily for the review of the parties. (*Compare* Dkt. No. 61, Attach. 6, at 9-14 [attaching pages "4" through "9" of Plfs.'

9

Memo. of Law] *with* Dkt. No. 64, at 6-7 [attaching pages "3" and "4" of Def.'s Opp'n Memo. of Law].)

**III.     ANALYSIS**

After carefully considering the matter, the Court denies Plaintiffs' motion for the reasons stated in Defendant's opposition memorandum of law. (*See, supra,* Part I.C. of this Decision and Order.) To those reasons, the Court would add six points.

First, contrary to Plaintiffs' argument, the Court is unable to find any portion of defense counsel's affidavit where he attempts to act as either an architect or a civil engineer. Rather, he appears to merely set forth the factual and procedural background of the action, with supporting exhibits. (Dkt. No. 63.)[2] What appears inappropriate is the attempt by Plaintiffs' counsel to submit a "reply affirmation"–a combined attorney affidavit and brief. (Dkt. No. 66.)[3] Plaintiffs' counsel is respectfully reminded that such a document violates Local Rule 7.1 of the Local Rules of Practice for this Court.[4] However, out of special solicitude to Plaintiffs as civil rights litigants, the Court will not strike their counsel's "reply affirmation."

---

[2]     Among those exhibits is Defendant's letter of April 10, 2013, forwarding the comments of its architect and engineer. (Dkt. No. 63, Attach. 4.)

[3]     Also appearing inappropriate is the attempt by Plaintiffs' counsel to serve as a sort of expert witness, basing his "personal knowledge" of part of the factual background of this action on information learned in his former employment, which ended in 2006. (Dkt. No. 66, at ¶¶ 2-3.)

[4]     *See* N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports."); N.D.N.Y. L.R. 7.1(a)(1) (requiring a memorandum of law to contain a table of contents); *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *23 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("[T]o the extent that Plaintiff's counsel is attempting to present arguments in refutation of the arguments advanced by Defendant . . . , the place for those arguments is in Plaintiff's opposition memorandum of law."); *Danford v. City of Syracuse*, 9-CV-0307, 2012 WL 4006240, *4 & nn.9-11 (N.D.N.Y. Sept. 12, 2012) (Suddaby, J.) ("The requirement that a memorandum of law contain a table of contents is an important one warranting enforcement, because it requires a party to separate and label its legal arguments, and enables the Court to identify and evaluate those legal arguments.") (collecting cases).

Second, the Settlement Agreement expressly required that Defendant provide Plaintiffs with "amplified plans and drawings." The 16 pages of architectural plans and drawings sent by Defendant on June 18, 2012, are unquestionably longer and more detailed than the two pages of drawings provided on September 7, 2011. (*Compare* Dkt. No. 61, Attach. 4 [original drawings] *with* Dkt. No. 63, Attach. 1, at 3-18 [amplified plans and drawings].) Defendant argues that Plaintiffs' objections to its original amplified plans and drawings in 2012 were based not on the ADA and New York State Building Code but on the *level of detail* in those plans and drawings. Although Plaintiffs bear the burden on their motion, they do not adduce admissible record evidence disputing Defendant's argument. Indeed, Plaintiffs' own record evidence supports Defendant's argument. (Dkt. No. 66, at ¶¶ 7-8 [Voninski Affirm., arguing that what was "promised" and "contemplated" in the Settlement Agreement were "bid drawings," which were more "detail[ed]" than "mere[] developmental drawings," and arguing that the plans in question were not "amplified plans"].)

The problems with Plaintiffs' argument (that the plans provided in June of 2012 were not "amplified plans and drawings") are twofold: (1) the sole support for the argument is an architect's affidavit that was improperly submitted for the first time in Plaintiffs' reply instead of their moving papers where it belonged (depriving Defendant of an opportunity to rebut it);[5] and

---

[5] *See, e.g., Mary Jo C. v. Dinapoli*, 09-CV-5635, 2014 WL 7334863, at *10, n.13 (E.D.N.Y. Dec. 18, 2014) ("By raising these arguments and evidence for the first time in her reply, plaintiff deprived the NYSLRS of an opportunity to challenge the reasonableness of those entries on other grounds."); *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y.2013). ("[I]t was not proper for [Plaintiff] to submit, for the first time in her reply to the plaintiffs challenge to her fee application, evidence and arguments justifying the reasonableness of the fees sought. . . . [Plaintiff] was obligated, in her initial moving papers, not in her reply, to provide evidence supporting the reasonableness of . . . the hours expended by her counsel [in the case]."); *Rothberg v. Chloe Foods Corp.*, 06-CV-5712, 2007 WL 2128376, at *17, n.73 (E.D.N.Y. July 25, 2007) ("[S]ince this argument and evidence was in plaintiff's reply brief for the first time, and defendants have not had an opportunity to challenge the authenticity or meaning of the document, I will not consider this argument at this time").

(2) in any event, the sole basis for the architect's conclusion (that the plans in question were not "amplified plans and drawings") is his circular argument that the plans in question were not either "bid drawings" or "complete detailed architectural plans and drawings." (Dkt. No. 66, Attach. 2, at ¶ 2.) The Settlement Agreement is conspicuously absent of the terms "bid drawings" or "complete detailed architectural plans and drawings," using instead the term "amplified plans and drawings." Plaintiffs do not challenge that term as ambiguous. Nor do Plaintiffs argue that Defendant somehow waived its contractual rights (specifically, its right that any objection to the proposed plans be based only on a violation of the ADA or New York State Building Code), or modified the written Settlement Agreement, by informing Plaintiffs in August of 2012 that it would (in a good-faith effort to move the settlement forward) attempt to provide the more-detailed amplified plans and drawings they requested. Simply stated, if Plaintiffs wanted the submission-and-approval process to proceed as demanded, they should have drafted Paragraph 3(a) of the Settlement Agreement accordingly.

Third, even assuming 16 pages of architectural plans and drawings provided by Defendant in June of 2012 did not constitute the sort of "amplified plans and drawings" necessary to enable Plaintiffs to object based on the ADA and/or New York State Building Code, the 33 pages of architectural plans and drawings provided by Defendant in March of 2013 did constitute such "amplified plans and drawings," as evidenced by the fact that Plaintiffs were able to articulate several such objections based on the ADA and/or New York State Building Code. The problem is that, despite a reasonable good-faith effort by the parties to resolve those objections, they have (thus far) been unable to do so. The Settlement Agreement does not appear to require Defendant to *accept* Plaintiffs' objections if Defendant has grounds to believe in good faith that those objections are unfounded. (*Cf.* Dkt. No. 63, Attach. 9, at 2.)

Fourth, Plaintiffs' reliance on the alternative courtroom renovation plan for the Madison County Veterans' Building is irrelevant to their motion to enforce the written Settlement Agreement of February 14, 2012, because the alternative plan was not referenced in that written Settlement Agreement (and, in any event, would have required additional approval by Madison County Board of Supervisors).

Fifth, Plaintiffs' late-blossoming willingness to waive their enforcement of the Settlement Agreement's requirement that there be approval of the Statewide ADA Coordinator (through a convoluted reliance on the inferential effect of a finding by the OCA's Chief Architect that the renovation plans are "suitable and sufficient" for courthouse operations), while appreciated, appears in stark contrast to the sort of good-faith that defense counsel appears to have shown in performing under the Settlement Agreement. If Plaintiffs had shown some of that willingness in 2012 and 2103, the parties' dispute could have been resolved. In any event, Defendant has articulated two credible reasons to believe such approval is, to Defendant, an essential term of the Settlement Agreement. (Dkt. No. 63, at ¶ 23.)

Sixth and finally, in the Settlement Agreement, Defendant did not agree to a "Court Monitor, Special Manager or Agent," nor did it agree to "a schedule for the implementation of the terms of the Settlement Agreement." As a result, the Court fails to understand how an appointment of the former or an establishment of the latter would constitute an "enforcement" of the Settlement Agreement. Rather, it would appear to constitute an amendment of the Settlement Agreement. Such an amendment is entirely within the power of the parties.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion to enforce the parties' settlement agreement pursuant to Fed. R. Civ. P. 60(b) (Dkt. No. 61) is **DENIED**.

The case is referred to United States Magistrate Judge David E. Peebles for review of whether any further discovery and/or extension of motion filing deadlines is necessary before the case is deemed ready for trial.

Dated: March 27, 2015
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge