UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL BROWN; and VINCENT ROGOWSKI,

                Plaintiffs,

v.

5:09-CV-0125
(GTS/DEP)

COUNTY OF MADISON,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF JOHN R. VONINSKI<br>  Counsel for Plaintiffs<br>P.O. Box 611<br>Manlius, NY 13104 | JOHN R. VONINSKI, ESQ.<br>ROGER B. WILLIAMS, ESQ. |
| BARCLAY DAMON LLP<br>  Counsel for Defendant<br>One Park Place<br>300 South State Street<br>Syracuse, NY 13202-2078 | CHRISTOPHER J. HARRIGAN, ESQ.<br>ANNE B. DOTZLER, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently pending before the Court, in this civil rights action filed by Paul Brown and Vincent Rogowski ("Plaintiffs") against the County of Madison ("Defendant"), is Plaintiffs' motion to dismiss their Amended Complaint without prejudice pursuant to Fed. R. Civ. P. 41(a)(2). (Dkt. No. 72.) For the reasons set forth below, Plaintiffs' motion is granted.

## I. RELEVANT BACKGROUND

### A. Relevant Procedural History

Plaintiffs commenced this action by filing an Amended Complaint alleging that, on October 9, 2007, in Wampsville, New York, Defendant wrongfully denied them entry to the Madison County Courthouse ("the Courthouse") by failing to make the building accessible to disabled persons of limited mobility (such as Plaintiffs), thus violating their rights under the First, Sixth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, as well as their right to public accommodations under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"). (*See generally* Dkt. No. 26 [Pls.' Am. Compl.].)

In September 2011, after numerous court conferences and a contentious discovery process, the parties tentatively reached a settlement and placed the "material terms" of their agreement on the record in open court. (Dkt. No. 61, Attach. 3, at 2-3 [Transcript of Settlement Proceeding].) The parties' agreement contemplated that Defendant would undertake renovations of the Courthouse to bring it within compliance of the ADA and the New York State Building Code. (*Id.* at 3.) Under the terms as articulated by defense counsel on the record, this process was to involve securing amplified architectural drawings approved by Plaintiffs' counsel and the State of New York. (*Id.* at 3-4.) The parties were ultimately unable to agree upon all terms of a settlement agreement, however; and, in December 2013, the Court reopened the case and set discovery and motion-filing deadlines. (Text Order filed Dec. 24, 2013.)

A more detailed discussion of the history of this case is contained in the Court's Decision and Order of March 27, 2015, denying Plaintiffs' motion to enforce the settlement agreement pursuant to Fed. R. Civ. P. 60(b). (Dkt. No. 67.) Familiarity with the factual allegations and

underlying procedural history is assumed in this Decision and Order, which is intended primarily for the review of the parties.

B. **Parties' Briefing on Plaintiffs' Motion**

1. **Plaintiffs' Memorandum of Law-in-Chief**

Generally, in support of their motion, Plaintiffs advance two arguments. First, Plaintiffs argue that dismissal without prejudice is appropriate because, following a compliance review initiated by the United States Department of Justice ("DOJ"), Defendant has entered into a "consent Settlement Agreement" with the United States, pursuant to which Defendant agreed "to correct the inaccessibility of certain" structures, including the Courthouse. (Dkt. No. 75, at 2 [Pls.' Memo. of Law]; Dkt. No. 72, Attach. 2 [Settlement Agreement Between United States and Madison County Under the ADA].)[1] Based upon that agreement, Plaintiffs argue that they "have achieved the results intended–an accessible courthouse compliant with the ADA. . . . Essentially, the Plaintiffs have won . . . ." (Dkt. No. 75, at 2-3.) In light of that fact, as well as Plaintiffs' "limited financial resources," Plaintiffs' counsel argues that Plaintiffs "perceive no need to further burden the Court[.]" (Dkt. No. 72, Attach. 1, at ¶ 6 [Pls.' Counsel's "Affirmation"].)[2]

---

[1] One of the "material terms" of the parties' settlement agreement placed on the record in court in September 2011 required that Plaintiffs withdraw "the Department of Justice complaints" they previously filed. (Dkt. No. 61, Attach. 3, at 4.) It is not clear whether DOJ's actions were the direct result of Plaintiffs' complaints to DOJ. The settlement agreement between Defendant and the United States reflected that they entered into the agreement, at least in part, "[i]n order to avoid the burdens and expenses of a further investigation and possible litigation[.]" (Dkt. No. 72, Attach. 2, at 5.)

[2] The Court notes that the "affirmation" of Plaintiffs' counsel is neither notarized nor sworn to pursuant to 28 U.S.C. § 1746. (Dkt. No. 72, Attach. 1.) Rather, the "affirmation" attempts to present legal argument. (*Id*.) Such an attempt is improper, as previously pointed out by the Court. (Text Order filed July 24, 2015.) Nonetheless, the Court will consider the "affirmation" out of special solicitude to Plaintiffs as civil rights litigants. The Court notes that the "affirmation" and subsequent memorandum of law do not together total more than 25 pages, the limit imposed by the Court's Local Rules of Practice. N.D.N.Y. L.R. 7.1(a)(1).

Second, Plaintiffs argue that Defendant never disclosed that it had entered into a "consent Settlement Agreement" with the United States in October 2014, nor did it disclose that it had committed, in January 2015, to remedy the Courthouse's ADA compliance issues. (Dkt. No. 75, at 3 [Pls.' Memo. of Law].) Plaintiffs argue that Defendant "intentionally chose not to inform anyone, but represented to the Court [that] it was faithfully negotiating a result to provide partial accessibility" pursuant to its settlement agreement in principle with Plaintiffs. (*Id.* at 4.) To remedy this violation, Plaintiffs request that the Court exercise its "vast inherent powers," which include its power to "enforce[] . . . the settlement agreement between the parties." (*Id.*)

### 2. Defendants' Opposition Memorandum of Law

Generally, in response to Plaintiffs' motion, Defendant asserts three arguments. First, Defendant argues that the *Zagano* factors relevant to Plaintiffs' motion weigh against dismissing Plaintiffs' Amended Complaint without prejudice. (Dkt. No. 77, at 3-6 [Def.'s Opp'n Memo. of Law] [citing, *inter alia*, *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)].) More specifically, Defendant argues as follows: (1) Plaintiffs were not diligent in bringing their motion, because more than eight years have passed since the action was commenced and "extensive discovery and motion practice" have already taken place; (2) this action has progressed to a prejudicial point because Defendant has provided extensive document production; (3) Defendant would have to incur the duplicative cost of relitigation because "there is no current plan" to rebuild the Courthouse and thus a second action "would likely require additional discovery to account for various situational changes"; and (4) Plaintiffs' explanation for why they request a dismissal without prejudice is inadequate because, not only is there no proof to support a conclusion that they have "essentially" won, they face the prospect of an

adverse decision on a dispositive motion. (*Id.* at 3-6.) Based upon those considerations, Defendant argues that Plaintiffs' case should be dismissed *with* prejudice. (*Id.* at 6.)

Second, Defendant argues that, if the Court is inclined to grant Plaintiffs' motion to dismiss without prejudice, the Court should award Defendant its attorneys' fees and costs. (*Id.* at 6-7.) Alternatively, Defendant argues that the Court may direct that Plaintiffs shall bear, or share, Defendant's costs in this action in the event that Plaintiffs file another action based on or including the same claims in the future. (*Id.* at 6-7.)

Third, Defendant argues that it has not "inappropriately withheld" the settlement agreement between United States and Defendant because the "investigation and resulting settlement agreement had nothing to do with accessibility issues relating to the" Courthouse. (*Id.* at 8.) Defendant argue those facts were not disclosed because they were irrelevant to Plaintiffs' action. (*Id.*)

### 3. Plaintiffs' Reply "Affirmation"[3]

Generally, in their reply to Defendant's opposition, Plaintiffs assert two arguments. First, Plaintiffs argue that, had Defendant properly disclosed DOJ's actions and its settlement agreement with Defendant, the costs to Plaintiffs and the need for judicial intervention would have been reduced. (Dkt. No. 78, at ¶ 3 [Pls.' Counsel's Reply "Affirmation"].) In light of Defendant's "conscious determination not to disclose" DOJ's involvement related to ADA

---

[3] The Court notes that it has *twice* previously reminded Plaintiffs' counsel of the impropriety of filing "briefidavits" in this District. (Dkt. No. 67, at 10 & n.4; Text Order filed July 24, 2015.) Yet, he has continued to flagrantly disregard the Court's Local Rules of Practice. <u>Plaintiffs' counsel is respectfully advised that, should he commit this error again in a proceeding before the undersigned, the offending submission will be struck from the docket and not considered by the undersigned</u>.

compliance in Madison County facilities, Plaintiff "suggest[s]" that the Court grant its motion and "reinstate the monetary terms of the written [s]ettlement between the parties in this action." (*Id.* at ¶¶ 4-5.)

Second, Plaintiffs argue that, despite defense counsel's statement that there are no present plans regarding the Courthouse, Plaintiffs "are satisfied" that their concerns regarding the Courthouse's accessibility have been or are being addressed, based upon statements made by the Chairman of the Madison County Board of Supervisors at the Board's January 2015 meeting. (*Id.* at ¶¶ 8, 10.) Specifically, Plaintiffs argue, in remarks at the meeting, the Chairman explained that "one major project that will take place over the next four to five years" is a "massive" project "result[ing] in a completely ADA-compliant court house with state-of-the-art functionality." (*Id.* at ¶ 8; *accord*, Dkt. No. 72, Attach. 3, at 2 [attaching page "40" of the minutes of the Madison County Board of Supervisors Organization Meeting, dated Jan. 6, 2015].)[4] Based upon these remarks, Plaintiffs argue that "there is no further reason to proceed with this action." (Dkt. No. 78, at ¶ 10.)

## II.  GOVERNING LEGAL STANDARD

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that, except where all parties agree to a stipulation of dismissal,

> an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2).

---

[4] Although Plaintiffs assert that the Chairman of the Madison County Board of Supervisors made this statement, the excerpt attached to Plaintiffs' motion does not appear to indicate who was speaking. (Dkt. No. 72, Attach. 3, at 2.)

"Voluntary dismissal without prejudice is thus not a matter of right." *Zagano*, 900 F.2d at 14. "Factors relevant to the consideration of a motion to dismiss without prejudice include [1] the plaintiff's diligence in bringing the motion; [2] any undue vexatiousness on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss." *Id.* (internal quotation marks omitted). "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).

## III. ANALYSIS

### A. Plaintiffs' Motion to Dismiss Without Prejudice

#### 1. Whether Plaintiffs Were Diligent in Bringing Their Motion

"When analyzing whether a party was diligent in bringing a motion, courts have focused on whether or not the moving party encouraged the non-moving party to continue discovery without any intention of pursuing its claims." *Omega Inst., Inc. v. Univ. Sales Sys., Inc.*, 08-CV-6473, 2010 WL 475287, at *3 (W.D.N.Y. Feb. 5, 2010) (collecting cases). "In addition, courts consider factors such as the length of time an action has been pending." *Id.* (collecting cases). However, ultimately, "[c]ourts are concerned with whether the efforts of the party were 'geared towards an efficient resolution.'" *Id.* (quoting *United States v. Underwriters Ins. Co. v. United Pac. Assocs.*, 05-CV-1012, 2006 WL 2038507, at *2 [E.D.N.Y. July 19, 2006]).

Here, Plaintiffs' original Complaint was dated December 29, 2008. (Dkt. No. 1, Attach. 2, at 4 [Pls.' Compl.].) The case was removed to this Court on February 2, 2009, and Plaintiffs filed an Amended Complaint on August 23, 2010. (Dkt. No. 1 [Notice of Removal]; Dkt. No. 26

7

[Pls.' Am. Compl.].) In the several years since this action was commenced, the parties have exchanged discovery (as well as conducted depositions), engaged in motion practice, sought judicial intervention in an effort to resolve disputes, and attended numerous status conferences to keep the Court apprised of on-going settlement efforts. (*See, e.g.,* Dkt. No. 21 [Pls.' Motion to Compel]; Dkt. No. 28 [Def.'s Ltr. Motion Requesting Court Conference Regarding Discovery Dispute, filed Oct. 25, 2010]; Dkt. No. 33 [Defendant's Status Report Regarding Discovery, filed Nov. 12, 2010]; Text Order of May 1, 2013, granting Plaintiff's request for conference and extending time for parties to finalize settlement.)

While the case has been long pending and substantial steps toward a trial or other disposition have been taken, Defendant's argument that Plaintiffs have not been diligent in bringing the present motion based on how much time has passed is unpersuasive. (Dkt. No. 77, at 4 [Def.'s Opp'n Memo. of Law].)[5] The purported impetus for Plaintiffs' motion was DOJ's intervention, the consent settlement agreement entered into between the United States and Defendant in October 2014, and Defendant's "State of the County" address in January 2015. (Dkt. No. 72, Attach. 1, at ¶¶ 3-5 [Pls.' Counsel's "Affirmation"].) Plaintiffs' counsel asserts that Plaintiffs first learned of DOJ's involvement in April 2015, which the Court finds to be a relatively recent event. (*Id.* at ¶ 4.) *See, e.g., Parker v. Tougher Indus., Inc.*, 06-CV-0400, 2013 WL 316389, at *2 (N.D.N.Y. Jan. 28, 2013) (Kahn, J.) ("Plaintiffs were diligent in making this [m]otion. Though approximately four years elapsed between the filing of the Complaint and the filing of the [m]otion, Plaintiffs moved to dismiss the action shortly after the Second Circuit

---

[5] The Court notes that the length of time the action has been pending is not a dispositive factor. *Omega Inst., Inc.*, 2010 WL 475287, at *3.

handed down a decision that discredited Plaintiffs' argument."); *cf. Krivchenko v. Clintondale Aviation, Inc.*, 13-CV-0820, 2014 WL 4684808, at *4 (N.D.N.Y. Sept. 18, 2014) (McAvoy, J.) ("The discovery makes clear that Plaintiffs had the relevant information long before Defendant filed the summary judgment motion, but Plaintiffs refused to dismiss the action."). Defendant does not dispute this assertion, and indeed acknowledges that DOJ's investigation and the subsequent settlement agreement were not disclosed by Defendant in the course of this litigation. (Dkt. No. 77, at 8 [Def.'s Opp'n Memo. of Law].) Finally, it appears from the docket sheet that, between April 2015 and the date of the filing of their motion to dismiss, Plaintiffs have diligently attempted to obtain Defendant's consent to a dismissal of their Amended Complaint without prejudice. (*See generally* Docket Sheet.)

Under the circumstances, the Court cannot conclude that Plaintiffs were not diligent in bringing their motion. As a result, the Court finds that this factor weighs in favor of dismissal without prejudice.

### 2. Whether There Was any Undue Vexatiousness on Plaintiffs' Part

"In determining whether a party was unduly vexatious in pursuing its claim, courts consider whether the party had 'ill-motive.'" *Omega Inst., Inc.*, 2010 WL 475287, at *4 (citation omitted). "As with the diligence factor, courts find 'ill-motive' where plaintiff has assured the court and the defendants that they intended to pursue their claims prior to seeking a dismissal." *Id*.

Defendant does not argue that Plaintiffs were unduly vexatious in filing their motion, and, in any event, the record does not support that conclusion. While it appears that Plaintiffs, who have limited mobility, believed it was necessary to pursue this action to persuade Defendant

9

to renovate the Courthouse for ADA-compliant accessibility, the Court cannot conclude that Plaintiffs' change of heart constitutes "ill-motive." Indeed, Plaintiffs' motion to dismiss is premised upon their discovery that Defendant and the United States have entered into a settlement agreement and that Defendant now intends to undertake significant renovations related to Courthouse accessibility over the next several years. As a result, the Court finds that this factor also weighs in favor of dismissal without prejudice.

### 3. Whether the Suit Has Progressed to a Prejudicial Point

"The extent to which a suit has progressed is considered by many courts in the Second Circuit to be of primary importance." *Omega Inst., Inc.*, 2010 WL 475287, at *4. "[T]he focus of the analysis on a motion for voluntary dismissal is the prejudice to the defendant." *BD ex. rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 123 (S.D.N.Y. 2000); *accord, Emory v. New York*, 11-CV-1774, 2013 WL 1881009, at *3 (E.D.N.Y. May 6, 2013) (explaining that dismissal with prejudice was appropriate where, among other things, plaintiffs sought dismissal "almost two years after the action began, over a year after fact discovery was concluded, and after multiple motions have been fully-briefed, requiring the defendants to expend significant time, effort and resources to defend an action that plaintiffs now concede has no legal merit.") (footnote omitted).

This case has been pending for several years. During that time, fairly significant documentary discovery has been exchanged, witnesses have been deposed, the parties have engaged in some motion practice, and they have made substantial effort to reach a settlement. Defendants conclude from these facts that "this lawsuit has progressed beyond a point where dismissal without prejudice is appropriate." (Dkt. No. 77, at 5 [Def.'s Opp'n Memo. of Law].) However, Defendants do not explain exactly *why* such a conclusion follows in this particular

10

case–where the request for dismissal has been caused by events outside of Plaintiffs' control, discovery in this case may be used in a future case, and no dispositive motion by Defendant is pending). As a result, the Court finds that this factor weighs in favor of dismissal without prejudice.

### 4. Whether Relitigation Would Result in a Duplicative Expense

As Defendant acknowledges, the mere fact that it may have to continue to defend against the claims asserted in Plaintiffs' Amended Complaint in a second action, should Plaintiffs' Amended Complaint be dismissed without prejudice, is insufficient to constitute the "plain legal prejudice" necessary to render a with-prejudice finding, which requires something more "than the mere prospect of a second lawsuit." *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947); *accord, Kwan*, 634 F.3d at 230. Both the Supreme Court and Second Circuit have specifically recognized this fact. *See, e.g., Jones v. Sec. & Exch. Comm'n*, 298 U.S. 1, 19 (1936) (finding that "[t]he mere prospect of a second litigation" is insufficient to rise to the level of legal prejudice); *accord, D'alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996). As the U.S. District Court for the Southern District of New York has explained, "[E]ven if [plaintiff] were to re-litigate the remaining claims in a future action, whatever work that defendants have done in preparing for trial can easily be used in a subsequent, similar action." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 33 (S.D.N.Y.2009); *see also Ascentive, LLC v. Opinion Corp.*, 10-CV-4433, 2012 WL 1569573, at *6 (E.D.N.Y. May 3, 2012) ("In the event that Ascentive again files suit against PissedConsumer in another court, it is likely that the grounds will be the same and PissedConsumer will thus be able to use much of the work that it has completed in this action in defending any subsequent suit.").

However, Defendant argues that, if Plaintiffs file a second action against the County based on substantially the same facts and circumstances as formed the basis for their first action

(which is likely, given that "[t]here is no current plan to renovate the . . . Courthouse"), the second action would "likely require additional discovery to account for various situational changes." (Dkt. No. 77, at 5-6 [Def.'s Opp'n Memo. of Law].) Defendant does not provide evidence of either this "additional discovery" or these "various situational changes." (*Id*.) Nor does Defendant even identify these things. (*Id*.)

As a result, the Court finds that this factor weighs in favor of dismissal without prejudice.

### 5. Whether Plaintiffs' Explanation for the Need to Dismiss Without Prejudice Is Adequate

In evaluating this factor, courts consider whether the moving party has provided a "reasonable explanation for why it wishes to have its . . . claims voluntarily dismissed without prejudice." *Banco Cent. de Paraguay*, 2006 WL 3456521, at *7. When a court is convinced that the plaintiff seeks dismissal to "avoid the prospect of an adverse decision on a dispositive motion," dismissal may be inappropriate. *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004).

As discussed above, Plaintiffs argue that Defendant's settlement agreement with the United States, and the planned renovations in relation to that settlement agreement, will result in the Courthouse renovations that Plaintiffs sought when they commenced this action. (Dkt. No. 72, Attach. 1, at ¶ 6 [Pls.' Counsel's "Affirmation," explaining that Plaintiffs were seeking "an accessible courthouse for disabled individuals under the review of an independent government agency"].) While Defendant is correct that Plaintiffs' "success" has not been ensured to a certainty, the Court is persuaded that Plaintiffs have provided an adequate explanation for seeking dismissal in light of the developments between Defendant and the United States. *See, e.g., Ogden Power Development-Cayman, Inc. v. PMR Ltd. Co.*, 14-CV-8169, 2015 WL

12

2414581, at *7 (S.D.N.Y. May 21, 2015) ("Petitioners assert that this action is largely mooted now that the Tribunal has been constituted and there have been positive developments with regard to actions respondents were taking in the Philippines, from which petitioners originally sought to protect themselves. . . . The Court concludes that this explanation is reasonable."). As a result, the Court finds that this factor weighs in favor of dismissal without prejudice.

### 6. Balancing the Factors

Because the Court finds that each of the *Zagano* factors weigh in favor of granting Plaintiffs' motion to dismiss without prejudice, the Court finds that, together, the *Zagano* factors tip decidedly in favor of granting Plaintiffs' motion to dismiss without prejudice.

### B. Defendant's Request for Attorneys' Fees and Costs

With regard to Defendant's request for an award of attorneys' fees and costs in the event of a dismissal without prejudice, the Court finds that the general purpose of such a fee award–i.e., to reimburse a defendant for the litigation costs incurred, in view of the risk that the same suit will be refiled and impose duplicative expenses upon the defendant–would have to be achieved in a way that "the court considers proper" pursuant to Fed. R. Civ. P. 41(a)(2).

A resort to "fairness" is unavailing under the circumstances given that what might seem "fair" to Plaintiffs would no doubt seem "unfair" to Defendant (and vice versa). Moreover, there is a lack of record evidence establishing the relative financial means of the parties, and whether Defendant is laboring under a financial burden proportionate to those under which Plaintiffs may be laboring. More helpful to the Court is a careful cost analysis.

In the Court's view, if the second action asserted the same claims against the same defendant based on the same facts as in the first action, Defendant would incur an otherwise unnecessary monetary cost in having to pay its attorneys to, *inter alia*, (1) refresh their

recollections of the procedural history of and facts discovered in the first action, (2) refile an answer and (3) ensure that the second action starts off where the first action left off. However, that cost appears difficult to estimate at this time, which is presumably why Defendant did not attempt to do so in its motion papers. In any event, to be recovered at this point in time, that cost would have to be multiplied by the risk of having to incur it, and then reduced by the prospect of saving the cost of litigating the first action to completion. However, this latter cost also is not estimated by Defendant.

It is Defendant's burden to show cause for its request for attorneys' fees and costs. Under the circumstances, the Court finds that Defendant has not met its burden. However, Defendant is free to seek those attorneys' fees and costs, either directly or as an offset, on a properly supported motion for attorneys' fees and costs in any second action.[6] As a result, this request is denied without prejudice.

### C.     Plaintiffs' Request for Other Relief

Finally, Plaintiffs request that, to remedy Defendant's purported intentional withholding of "critical information," the Court exercise its "vast inherent powers" to enforce Plaintiffs' settlement agreement with Defendant. (Dkt. No. 75, at 3-4 [Pls.' Memo. of Law].) For the sake of brevity, the Court will not linger on the fact that Plaintiffs' prior motion to enforce the settlement agreement between the parties was denied for reasons that undermine Plaintiffs' renewed request. (Dkt. No. 67.) More important is the fact that Plaintiffs fail to show cause for an exercise of the Court's "vast inherent powers" (or even specify the Federal Rule of Civil Procedure on which such a request is based). As a result, this request is denied.

---

[6]     Plaintiffs are advised that the Court would seriously consider granting such a request by Defendant.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion to dismiss their Amended Complaint **without prejudice** pursuant to Fed. R. Civ. P. 41(a)(2) (Dkt. No. 72) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendant and close this case.

Dated: September 30, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief, U.S. District Judge